UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES K. MORAN,                                    :
      Plaintiff,                                 :
                                                 :
v.                                                 :          3:10-cv-00393-WWE
                                                 :
BOARD OF EDUCATION OF                              :
THE CITY OF BRIDGEPORT,                            :
      Defendant.                                 :

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**

Plaintiff James K. Moran filed this action against defendant Board of Education of the

City of Bridgeport ("the Board") alleging violation of the Americans with Disabilities Act

("ADA"), 42 U.S.C. 12101 *et seq*.  Specifically, plaintiff claims that his per diem teaching

contract was not renewed because of his sleep apnea.

Defendant has filed a motion for summary judgment.  For the following reasons,

defendant's motion will be denied.

**BACKGROUND**

Plaintiff was hired by the Board in 1975 and thereafter worked in a variety of teaching

positions with the Bridgeport Public School System.  Plaintiff was certified in and primarily

taught social studies, except for a brief stint during which he taught math.  From the time of his

hire through the end of 2004, plaintiff worked a full-time, daytime teaching schedule of 8:00 a.m.

to 2:30 p.m.

In 2004, plaintiff came under the care of Dr. Philip Rosenthal for treatment of sleep

apnea.  In December of 2004, plaintiff requested, and the Board granted, a one month medical

leave of absence as recommended by Dr. Rosenthal to pursue treatment of Chron's disease and

sleep apnea.  In the following months, plaintiff continued to request, and the Board granted, extensions of his leave of absence as recommended by Dr. Rosenthal.

During this time, Carole Pannozzo, the Board's Executive Director of Human Resources, met monthly with plaintiff and his union representative to discuss his status and collaborate on a solution to bring plaintiff back to work.  On January 11, 2006, Dr. Rosenthal reported to the Board that plaintiff was making slow progress with his sleep apnea.  On February 14, 2006, Dr. Rosenthal confirmed that February 27, 2006, was a reasonable date for plaintiff to return to work.

Pursuant to discussions with the Board, plaintiff accepted a position teaching social studies during the evenings at Central High School in Bridgeport ("Central at Night") from 3:45 p.m. to 8:15 p.m.  Central at Night is a credit recovery program for Bridgeport high school students who are overage, under credited, or having a difficult time in a traditional daytime school setting.  Plaintiff and the Board agreed that plaintiff would work reduced hours but receive full pay in exchange for sacrificing sick leave.

On February 27, 2006, plaintiff returned to work and completed the fourth quarter of the 2005-2006 academic year.  Plaintiff returned to the same position at Central at Night in the fall for the 2006-2007 academic year.  At all times subsequent to his return, plaintiff was able to perform the essential functions of his job.

On March 31, 2007, plaintiff retired from his employment with the Board by submitting a letter to Ms. Pannozzo.  The letter stated: "This letter is to inform the City of Bridgeport's Board of Education that I am officially retiring from teaching effective April 1, 2007.  According to plaintiff, he retired because he had run out of sick leave as of April 1, 2007, and would be unable to receive his full salary.

Despite his retirement, plaintiff completed the remainder of the 2006-2007 academic year as an hourly employee.  During this time, plaintiff received pension checks from the State of Connecticut.

During the spring of 2007, the Board hired Alejandro Ortiz as Principal of Central High School for the 2007-2008 academic year.  His responsibilities included supervision of Central at Night.  At the conclusion of the 2006-2007 academic year, Mr. Ortiz met with plaintiff to inform him that he would not be recommended for a per diem position at Central at Night for the 2007-2008 academic year.  Mr. Ortiz asserts that his decision not to recommend plaintiff was based on his goal of staffing Central at Night with daytime staff so he could better establish continuity between the two programs.  However, plaintiff asserts that Mr. Ortiz acknowledged during the meeting that higher-ups wanted plaintiff terminated as punishment for his prolonged absence.  Plaintiff contends that at least one other teacher, James Gelder, was hired by Central at Night for the 2007-2008 school year despite not being a member of the daytime staff, thus demonstrating that Mr. Ortiz's explanation of his decision not to recommend plaintiff was pretext.

Plaintiff did not apply for any position with the Board after the 2006-2007 academic year.  Plaintiff contends that his decision to forgo application was based on Mr. Ortiz's unequivocal articulation that plaintiff would not be brought back for the 2007-2008 school year.  Plaintiff argues that defendant's refusal to continue his employment as a per diem teacher constitutes an adverse employment action.

Plaintiff is no longer affected by his sleep apnea.

## DISCUSSION

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.  The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him.  See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is

sought, summary judgment is improper.  See Security Ins. Co. of Hartford v. Old Dominion

Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

**Disability Discrimination**

In analyzing discrimination claims under the ADA, Second Circuit courts apply the

familiar three-step, burden-shifting analysis established in McDonnell Douglas Corp. v. Green,

411 U.S. 792 (1973).  First, a plaintiff must prove by a preponderance of the evidence a *prima*

*facie* case of discrimination.  Id at 802.  The burden then shifts to the employer to set forth a

legitimate, non-discriminatory reason for its actions.  Id at 802-03.  If successful, the burden

shifts back to the plaintiff to produce evidence demonstrating that the employer's stated reason is

merely pretext for discrimination.  Id at 804.

To make out a *prima facie* case under the ADA, plaintiff must establish that: "(1) his

employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was

otherwise qualified to perform the essential functions of his job, with or without reasonable

accommodation; and (4) he suffered adverse employment action because of his disability."

Giordano v. City of New York, 274 F.3d 740, 747 (2001).

**Evidence of Disability**

First, defendant argues that plaintiff was not disabled within the meaning of the ADA as

plaintiff was not impaired by sleep apnea in 2007, when the decision not to renew his contract

was made.  Nevertheless, a plaintiff can establish a disability by means of one of three theories,

by establishing that: (1) the plaintiff was actually disabled; (2) the plaintiff was "regarded as"

disabled; or (3) the plaintiff had a "record of" a disability.  42 U.S.C. § 12102(1).

To qualify under the "record of" disability theory, a plaintiff need not be actually disabled

at the time of the adverse employment action.  Colwell v. Suffolk County Police Dept., 158 F.3d

635, 645 (2d Cir. 1998).  "Even without a showing of substantial limitation of a major life

activity, the ADA's definition of 'disability' can be satisfied by 'a record' of an impairment that

substantially limits one or more major life activities.  The intent of this provision, in part, is to

ensure that people are not discriminated against because of a history of disability."  Id. (internal

citation omitted).

     Defendant does not dispute that there is sufficient evidence for a reasonable jury to find

that plaintiff had a record of disability.  Indeed, plaintiff missed more than a full school year,

from late 2004 to early 2006, due his inability to work because of his inability to sleep.

Furthermore, plaintiff contends that he was explicitly told that his contract was not being

renewed as retribution for his prolonged absence.  Accordingly defendant's argument that

plaintiff was not disabled within the meaning of the ADA simultaneous to his termination fails.

**Adverse Employment Action**

     Second, defendant argues that plaintiff did not suffer an adverse employment action

because of his disability as he did not apply for a teaching position for the 2007-2008 academic

year.

     The Second Circuit has clearly held that where an employee seeks renewal of the

employment contract, non-renewal of the contract constitutes an adverse employment action.

Leibowitz v. Cornell University, 584 F.3d 487, 501 (2d Cir. 2009).  Defendant contends that

since plaintiff didn't re-apply for the per diem teaching position, he didn't seek renewal of the

contract; therefore, in this case, the non-renewal was not an adverse employment action.

     In Leibowitz, the Court went on to state: "Although the parties focus on the terminology

used with respect to the plaintiff, whether plaintiff was 'laid off' or 'terminated,' or her employment was 'not renewed' is not critical to the legal analysis; rather, she suffered an adverse employment action because she was denied the requested continued employment, regardless of the label." Id. Here, it is undisputed that plaintiff was denied requested continued employment in the general sense. It was clear from the meeting between plaintiff and Mr. Ortiz at the conclusion of the 2006-2007 academic year that plaintiff expressed his desire to remain employed for the 2007-2008 school year, but Mr. Ortiz informed plaintiff that only daytime staff would be receiving recommendations for Central at Night positions.

Drawing all inferences in favor of plaintiff, where, as here, an employer, with knowledge that its employee wants to continue his employment, essentially tells its employee, "Don't bother applying" - for stated reasons that appear facially false - it may constitute denial of requested employment. This is especially true where the Second Circuit has advised that labels are not important. Id. Here, plaintiff was discouraged to apply because he was not part of the daytime staff. However, defendant hired at least one other teacher, James Gelder, for Central at Night, despite Gelder's failure to work the daytime shift. Furthermore, although Mr. Ortiz denies it, plaintiff maintains that Mr. Ortiz explicitly stated that plaintiff's contract was not being renewed because of his previous absenteeism related to his sleep apnea.

**Pretext**

Finally, defendant argues that plaintiff cannot establish pretext. This argument also fails because plaintiff has shown evidence that defendant's proffered reason is unworthy of credence. See Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 173 (2d Cir. 2006).

When deposed, Mr. Ortiz was asked why James Gelder was approved and hired by

Central at Night for the 2007-2008 school year despite not being a member of the daytime staff. Although Mr. Ortiz supervised the Central at Night program and approved all hiring decisions, he initially could not recall if Mr. Gelder even worked at Central at Night.  Subsequently, when asked why Mr. Gelder was granted an exception that plaintiff was not, Mr. Ortiz responded, "He may have been overlooked."  While Mr. Gelder may have been overlooked, "[r]esolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." McClellan v. Smith, 439 F.3d 137, 148 (2d Cir. 2006). Under these circumstances, a rational jury could infer that defendant's employment decision was based in part on discrimination, especially if it gives credit to plaintiff's allegation that he was explicitly notified that his termination was in retaliation for his long medical absence. Accordingly, defendant's motion for summary judgment will be denied.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [Doc. #35] is DENIED.

Dated this 28th day of March, 2013, at Bridgeport, Connecticut.


_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE